UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARGARET CLARK, ) | Case No. 1:06 CV 2829 |
| ) | |
| Plaintiff, ) | Judge Lesley Wells |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | Magistrate Judge James S. Gallas |
| ) | |

Petitioner Margaret Clark seeks judicial reversal of the Social Security Administration's decision to deny her supplemental security income under Title XVI of the Social Security Act. Clark has exhausted her administrative remedies in receiving the final decision from the Appeals Council (See 20 C.F.R. §416.1481), the prerequisite to bringing this action under 42 U.S.C. §1383(c)(3). Clark claims entitlement due to disability resulting from physical impairments of seizure disorder and ischemic heart disorder status-post myocardial infarction (TR. 17). However the Commissioner determined that despite these physical problems, Clark could perform a significant range of light work as defined under 20 C.F.R. §416.967(b) (TR. 18). Based on vocational expert testimony from an administrative hearing, the Commissioner concluded that Clark as an "individual closely approaching advanced age" who could perform substantial gainful activity as a cashier and room cleaner (TR. 18, 429-31). Clark challenges this determination arguing that the Commissioner improperly rejected Dr. Grayson's opinion of disability and further that the Commissioner's assessment of Clark's credibility was in error.

1:06 CV 2829                                                                 2

The issues before this court must be resolved under the standard whether there is substantial evidence in the record to support the Commissioner's decision. Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based upon the record taken as a whole. *Barney v. Secretary of Health and Human Services*, 743 F.2d 448 (6th Cir. 1984); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Secretary*, 893 F.2d 106, 108 (6th Cir. 1989); *Richardson*, 402 U.S. at 401.

> In determining whether the Secretary's factual findings are supported by substantial evidence, we must examine the evidence in the record 'taken as a whole.' *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980), and "must take into account whatever in the record fairly detracts from its weight." *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam).

*Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and see *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

1:06 CV 2829                                                      3

*Opinion of Treating Physician:*

The major thrust of Clark's argument is that the Commissioner should have adhered to Dr. Grayson's opinion that Clark is disabled. Clark argues that she began treatment with Dr. Grayson, an internist, in November 2002 (TR. 161). Clark then jumps ahead to the doctor's June 17, 2005 response to a physical capabilities evaluation which indicates that Clark is limited to less than the full range of sedentary work as defined under §416.967(a) (TR. 237). The problem with this report is that it is devoid of any explanation. Among the restrictions included were restriction to occasional lifting of 10 pounds, controlled climate, avoiding moving machinery, no push/pulling with arm controls and no repetitive foot movements, no use of leg controls, and no fine manipulation (TR. 237). Dr. Grayson reported that Clark could sit only four hours during a workday, could never crawl or climb, and could occasionally reach, bend, or squat (*Id.*).

This assessment of Clark's residual functional capacity was rejected in the Commissioner's determination as being contrary to the assessments of the nonexamining state agency physicians (TR. 16, 231-36), lacking support by objective clinical findings and lacking support in Dr. Grayson's own treatment records (TR. 16).

As *Wilson v. Commissioner* instructs, the Commissioner must give the opinion from the treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.*, 378 F.3d 541, 544 (6th Cir. 2004) quoting 20 C.F.R.

1:06 CV 2829                                                    4

§404.1527(d)(2) and §416.927(d)(2). On this last point, supportability of the medical opinion of disability has long been a key factor in determining how much weight to give the opinion. The Commissioner is not bound by a conclusory opinion which is unsupported by detailed objective criteria, or when there is substantial medical evidence to the contrary. *Cutlip v. Secretary*, 25 F.3d 284, 286 (6th Cir. 1994); *Cohen v. Secretary*, 964 F.2d 524, 528 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). These judicial rules have been incorporated into the regulatory scheme under §404.1527(d)(2) and its SSI counterpart §416.927(d)(2), which require that the treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." This includes reporting: (1) treatment provided; (2) extent of examination; and (3) testing (20 C.F.R. §404.1527(d)(2)(ii) and §416.927(d)(2)(ii)). The ALJ *must* apply the regulatory factors of this section when explaining why the treating source was not accorded controlling weight. *Bowen v. Commissioner of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544. The ALJ also must consider the medical opinions "together with the rest of the relevant evidence." See 20 C.F.R. §416.927(b).

The Commissioner had substantial evidence to support the rejection of this treating physician's opinion due to the lack of supportability and consistency (See 20 C.F.R. §416.927(d)(3). Supportability is fairly obvious to determine as it is based on the laboratory findings and medical signs. As the regulation explains, the opinion from nonexamining sources will depend on "the degree in which they provide supporting explanations for their opinions." Consistency is simply consistency "with the record as a whole."

1:06 CV 2829                                                                 5

There is a fault in the decision in the rejection of Dr. Grayson's opinion as lacking support in the doctor's own notes. This remark although technically correct is factually misleading. Clark had received treatment through Kaiser Permanente so there was a group of treating physicians over which Dr. Grayson was the "primary physician" (e.g. TR. 342). Reports from Dr. Grayson herself constitute a minimal portion of the treatment notes. Presumably Dr. Grayson's assessment of functional capacity was based on reports from associates including cardiologists who had treated Clark in conjunction with Dr. Grayson.

However, the other criticisms of Dr. Grayson's functional capacity assessment of Clark are correct and provide substantial evidence for its rejection. First, it was not consistent with the residual functional capacity assessment from the non-examining state agency physicians, so it lacks consistency with the record as a whole. The assessment from the nonexamining state agency physicians states that it was based on the degree of cardiac impairment evidenced by January 2004 studies (TR. 232). So there are divergent medical opinions based on the same medical record. Next, Dr. Grayson's opinion lacks supportability. Granted §416.927(d)(1) provides that generally more weight is to be accorded to the treating physician "than to the opinion of a source who has not examined you." However, when it comes to supportability under §416.927(d)(3) the weight opinions from nonexamining sources receive "will depend on the degree in which they provide supporting explanations for their opinions." The reports from the nonexamining state agency physicians referred to the results from cardiac catheterization which revealed blockage, and deterioration in the left venticular ejection fraction from 50% to 40% (TR. 322). Based on these

1:06 CV 2829                                                             6

objective findings in the medical evidence, the nonexamining state agency physicians found unlimited ability to push/pull and/or operate full controls and no manipulative limitations (TR. 232-33). There is no explanation for the limitations in Dr. Grayson's report and no discernable cause for such restrictions in the medical evidence. Noteworthy is that even Clark cannot locate support for Dr. Grayson's restrictions, such as no fine manipulation.

Granted the administrative reasoning was imperfect but nonetheless it is well-established that a conclusory opinions are not binding on the Commissioner. Accordingly, the Commissioner had substantial evidence from the support from the nonexamining state agency physician on which to conclude that Clark was capable of performing a reduced range of light work.

The assessment form the state agency physician did not clearly address Clark's other impairment of seizure disorder. The Commissioner, nonetheless, had substantial evidence. The Commissioner explains in the decision that Clark's seizure disorder is well-controlled and that this impairment was factored into the prohibition against working around hazards and climbing of ladders, ropes or scaffolds (TR. 17). Thus both severe impairments were accounted for in the administrative determination.

*Credibility:*

Credibility determinations track pain analysis. See *Felisky v. Bowen*, 36 F.3d 1027, 1038-39 (6th Cir. 1997); *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996);

1:06 CV 2829                                                                 7

*Walters v. Comm. of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997); and see *Saddler v. Commissioner of Soc. Sec.*, 173 F.3d 429, 1999 WL 137621 (Table 6th Cir. March 4, 1999); 20 C.F.R. §404.1529(c)(3); §416.929(c)(3). The rule is,

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 1996 WL 374186 (S.S.A.) at *1.

The ALJ acknowledged Social Security Regulation (SSR) 96-7p and concluded that following this guideline leads to the conclusion that Clark's disabling symptoms and limitations cannot be accepted because she "would not experience severe or disabling pain or any other disabling symptoms" (TR. 16). Clark argues that this issue received inadequate consideration pointing out that the Commissioner identified chest pain as Clark's symptom, but Clark had not complained of chest pain. Clark is correct.

The format set forth in SSR 96-7p outlines that administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R. §404.1529(c)(3) and §416.929(c)(3). See *Duncan v. Sec'y of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986); *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Under the two-prong pain analysis, there first must be a determination whether there exists an underlying medically determinable physical or mental impairment followed by the question

1:06 CV 2829                                                    8

whether the impairment would be reasonably expected to produce the individual's pain or other symptoms.   1996 WL 374186 at *2

The regulatory considerations that follow to investigate subjective complaints of pain or other symptoms consist of:

1.  The claimant's daily activities;

2.  The location, duration, frequency, and intensity of pain;

3.  Precipitating and aggravating factors;

4.  The type, dosage, effectiveness, and side-effects of medication to alleviate pain or other symptoms;

5.  Treatment, other than medication claimant has received for relief of pain; and

6.  Any other measures used to relieve pain (e.g. lying down or changing position).

7.  Other factors concerning functional limitations and restrictions due to pain or other symptoms.

See SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(I-vii); §416.929(c)(3)(I-vii). In addition, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 *1-2; *Saddler* at *2.

Clark complained of symptoms of fatigue and dyspnea. At the administrative hearing Clark testified that the medication she took made her dizzy and sleepy and she napped three or four times

1:06 CV 2829                                                    9

a day (TR. 418, 421-22). She also stated she could stand for an hour or two without having to sit down and she relied on family members to drive her to appointments or take her shopping (TR. 415, 420). Clark also complains of the fact that her testimony concerning her shortness of breath(dyspnea) and dizziness when she walked longer than a block was ignored (TR. 422).

The Commissioner's only discussion was that medical reports indicated that Clark was "feeling a lot better" and "able to walk farther" in relation to chest pain (TR. 16). The Commissioner erred by rejecting credibility on the basis that Clark "has denied any recurrent chest pain" (TR. 16). The reasoning did not address Clark's symptoms but instead attacked credibility on a phantom complaint.

The Commissioner counters that while the decision did not refer to "shortness of breath" or fatigue the decision specifically noted that there is no evidence of congestive heart failure (TR. 15-16, 232). The nonexamining state agency physician's report noted that there was no evidence of "CHF" which the Commissioner contends is the abbreviation for congestive heart failure. The Commissioner argues that shortness of breath and fatigue are two primary symptoms of congestive heart failure which result from the heart's inability to pump properly. According to the Commissioner Clark expressly stated that she was doing better, could walk farther and did not experience recurrent chest pain, which should count as analysis of Clark's alleged symptoms.

1:06 CV 2829                                                                 10

Obviously, there is no analysis made of the shortness of breath or fatigue. Furthermore, the Commissioner's argument is conceptually incorrect. Under this logic fatigue and shortness of breath are simply discredited as not supported by objective medical evidence, CHF. This reasoning violates SSR 96-7p.

In this circuit, the Commissioner's decision may be reversed and benefits awarded only when the Commissioner's decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Newkirk v. Shalala*, 25 F.3d 316 (6th Cir. 1994); *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); and see *Lashley v. Secretary*, 708 F.2d 1049 (6th Cir. 1983). Evidence of disability is neither overwhelming nor one-sided but unquestionably the decision fails to meet the requirements of SSR 96-7p in addressing complaints of dyspnea and fatigue. This remand is made with some reluctance because even Clark fails to cite any evidence in the medical record which would support her complaints of fatigue and dyspnea. Disposal of this issue is not possible as harmless error. This is not a situation where the alleged symptoms were not raised to the Commissioner (Compare *Mall v. Barnhart*, 78 Fed. Appx. 996 (5th Cir. 2003)), nor did the decision set out a foundation of factual findings which would compel rejection of claimant's credibility under SSR 96-7p even though such findings were technically not contained in the decision (See *Blom v. Barnhart*, 363 F.Supp.2d 1041, 1055-56 & n. 16 (E.D. Wis. 2005)). Accordingly remand under the fourth sentence of 42 U.S.C. §405(g) as incorporated through §1383(c)(3) is required due to the inadequate explanation in the administrative decision.

1:06 CV 2829                                                11

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons based on the arguments presented and the medical record, it is recommended that the decision of the Commissioner denying supplemental security income be reversed and remanded for reconsideration with special emphasis on the allegations of disabling symptoms due to dypsnea (shortness of breath) and fatigue.

                                              _____s/James S. Gallas_____
                                              United States Magistrate Judge

Dated: April 14, 2008